## DOUGLASS v. KENTON.

May 30, 1835.

*Rule to show cause why the rule of reference should not be stricken off.*

When a cause is arbitrated under the act of 1810, the jurisdiction of the court over it is not entirely divested.

The jurisdiction of the arbitrators consists merely in the power of taking cognizance of the cause *for the purpose of trial.*

When the trial before the arbitrators has been had, or when it becomes impossible, or when the arbitrators determine that they cannot or will not proceed, the court may resume *cognizance of the cause.*   Where one of the arbitrators has been qualified, but does not act, yet refuses to decline, the court will not interfere, unless the arbitrators, or a majority of them, shall finally determine that they cannot or will not proceed.

THIS cause was referred, under the act of the 20th of March 1810, to James Harper, S. M. Solomon and Abraham Okie.   The

rule was entered by the plaintiff on the 8th day of November 1834. At the day appointed for the meeting of the arbitrators, December 4th, 1834, two of them, Mr Solomon and Mr Okie, met and were duly qualified, and the parties being present, they adjourned on account of the absence of Mr Harper. The cause was continued by successive adjournments, till the 16th of April 1835, at which day Mr Harper appeared and was sworn, but Mr Okie being absent, the cause was again adjourned to the 24th of April, at which day Mr Solomon met the parties, and, with their consent, adjourned to a day which is still future. Shortly previous to the meeting of the 16th of April, Mr Okie conveyed information to his colleagues, that, from the state of his health, he could not possibly attend to the case in any reasonable time, if ever, and he desired to be excused from any further consideration of the matter. To this request of Mr Okie, the defendant refused to consent ; the plaintiff then requested Mr Okie to decline, and refuse to act as an arbitrator; but to this Mr Okie would not consent, believing that he could not with propriety do it, after having been sworn *to try the matter in variance.* The plaintiff thereupon applied to this court, and obtained this rule to show cause.

*Oakford* and *Tilghman,* for plaintiff.
*G. M. Wharton* and *P. A. Browne,* for defendant.

The opinion of the Court was delivered by

Jones, J. (after stating facts).—The rule is resisted by the defendant on two grounds, viz.

1. This court has no power to interfere, inasmuch as the jurisdiction of the cause is now vested in the arbitrators.

2. Supposing this court to possess that power, the case is not such as calls for its interference.

If the effect of the rule and of the proceedings had under it, is to divest this court entirely of its jurisdiction of the cause, it is very clear that any order which we may make in it, would be irregular and void: it is necessary, therefore, to inquire whether such is really their effect.

It certainly was not the object of the " act to regulate arbitrators" to deprive the courts of the jurisdiction which they had previously exercised ; its chief purpose was to facilitate the trial of causes,

[Douglass v. Kenton.]

and if the effect of it is to divest the courts of their jurisdiction and transfer it to arbitrators, it is incidental, not designed.

It is frequently said, however, that arbitrators have *jurisdiction*; that after their jurisdiction has attached, *the cause is out of court;* that the court cannot regulate or in any way interfere with the arbitrators while the cause is before them, nor inquire into the regularity of their proceedings after an award made. The arbitrators are said to be judges of law as well as of fact; and such was the argument of the defendant in this case.

But we apprehend that the jurisdiction possessed by arbitrators consists merely in the power of taking cognizance of the cause for the purpose of trial. It is not that attribute of a court of record which comprises all the powers necessary to the complete administration of justice: in other words, the courts possess jurisdiction in the full and proper sense of the word; arbitrators on the contrary, have only an inferior kind of jurisdiction, which is nothing more than the power to take cognizance of causes for the purpose of trial. The former includes the latter, they generally exist together, and in one and the same tribunal; but the latter may be suspended or transferred without divesting the former. The judiciary arrangements of England supply many illustrations of this distinction. *Com. Dig., tit. Courts, P. 2, Conusance of Pleas.* We apply it to the act and to the case under consideration. This court still has jurisdiction of this cause; but the power of the court to try the cause is suspended by force of the act, so far as is necessary for the exercise of the power or jurisdiction conferred by the act upon the arbitrators, and no further. The residue of jurisdiction remains in the court. When, therefore, the trial of the matters in variance has been had, or when it becomes impossible, or when the arbitrators shall determine that they cannot or will not proceed to exercise the power vested in them by the act, this court may resume their cognizance of the cause, and proceed to final judgment and execution in like manner as if no rule of reference had been entered.

The power of the arbitrators is confined to one specified object, viz. the trial of the matters in variance. They have no power to terminate the cause without trial, nor to prevent the determination of the cause by a trial. The terms of the act justify this interpretation. The courts retain all their original jurisdiction for the commencement of actions. They exercise also an appellate jurisdiction after an award. The effect of an appeal is to restore to the courts

[Douglass v. Kenton.]

the power of cognizance, which they have by virtue of the original writ.

The award (which the act also denominates a judgment) is executed by the process of the court. It may be removed by a writ of error directed to the judges of the court, and the writ, when issued for that purpose, is made in the common form. If reversed, a *venire* may be awarded by the supreme court, returnable before the judges of the court in which the action was commenced; and even while the cause is said to be out of court and in the jurisdiction of the arbitrators, it is *depending upon a rule entered in court.* The system, therefore, is interpolated between the original process (or, in case the plaintiff enters a rule of reference, between the declaration) and the final process or execution. It is a mode of trial substituted for the trial by jury, and all the powers and authorities implied in the idea of jurisdiction, which are not necessary to a trial in the manner appointed by this act, or incident to it, remain in the court, and may be exercised by the court for the advancement of justice.

These observations suggest the conclusion which we have formed upon the second position taken by the defendant, viz.

That the case is not such as calls for the interference of the court.

The trial of this cause by the arbitrators has not become impossible. If, for example, all the arbitrators appointed in a cause should die, it would be restored by act of law, and the suggestion of the fact upon the record only would be necessary. Nor have the arbitrators refused to proceed; but they are in doubt, it appears, how they should proceed. This is a matter of which they are the judges. We have no power to direct them: but when they, or a majority of them, shall finally determine that they will not proceed, or that they cannot proceed to try the matters in variance, it will be proper for this court to resume the cause upon the principle before stated.

On the second position taken by the defendant, this rule is discharged.

Rule discharged.